UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ergotron, Inc.,

      Plaintiff,

v.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 10-2010 ADM/JJG

Rubbermaid Commercial Products, LLC,

      Defendant.

_____

Kurt J. Niederluecke, Esq., Darren B. Schwiebert, Esq., Grant D. Fairbairn, Esq., and Ted C. Koshiol, Esq., Fredrikson & Byron PA, Minneapolis, MN, on behalf of Plaintiff.

Dean C. Eyler, Esq., and John L. Krenn, Esq., Gray Plant Mooty Mooty & Bennett, PA, Minneapolis, MN, and Luke T. Shannon, Esq., Stephen M. Hankins, Esq., and Shelley L. Merkin, Esq., Schiff Hardin LLP, Chicago, IL and San Francisco, CA, on behalf of Defendant.
_____

## I.  INTRODUCTION

On April 27, 2011, a Markman hearing was held before the undersigned United States District Judge in this patent infringement action by Plaintiff Ergotron, Inc. ("Ergotron") against Defendant Rubbermaid Commercial Products, LLC ("Rubbermaid").  Ergotron alleges that Rubbermaid infringed claims of U.S. Patent No. 6,489,849 B1 (the "'849 patent").

## II.  BACKGROUND

Ergotron is the owner by assignment of the '849 patent.  Am. Compl. [Docket No. 25] ¶ 7.  The '849 patent covers a low-profile storage lift system for flat-screen computers.  '849 patent [57].  The lift system allows for mounting of a monitor and keyboard on a vertical "transport assembly."  Id.  The transport assembly permits the monitor and keyboard to move up and down.  A "linkage assembly" supports the up and down movement of the monitor and keyboard and allows a user to maintain the monitor or keyboard in a desired vertical position.

Ergotron makes use of the '849 patent through its "StyleView" product. Am. Compl. ¶ 8. Rubbermaid has a competing line of products known under the trade names "Tandem Arm" and "Slim Line." See id. ¶ 9. Ergotron alleges that the 'Tandem Arm" and "Slim Line" products infringe the '849 patent.

At issue presently are claims 1, 4, 6, 7, and 20 of the '849 patent. The parties submitted a Joint Claim Construction Statement [Docket No. 31] on January 31, 2011. Remaining for construction are the terms: "pivot mount" and "means attached to said vertically oriented support panel between said first and second spaced apart vertically oriented and vertically movable rails for providing supported vertical linear motion and positioning of said vertically elevatable transport assembly with respect to said vertically oriented support panel and for maintaining said vertically elevatable transport assembly at the desired vertically elevated position when raised above the fully down position."

### III. DISCUSSION

**A.  Standard of Review**

Claim construction is a matter of law. Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996). In construing claims, courts should look first to intrinsic evidence, which includes the claims, the specification, and the prosecution history. Vitrionics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996). Claim terms are "generally given their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." Phillips v. AWH Corp., 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (quotation and citations omitted). However, a patentee

can choose to be "his or her own lexicographer by clearly setting forth an explicit definition for a claim term." Johnson Worldwide Assocs., Inc. v. Zebco Corp., 175 F.3d 985, 989 (Fed. Cir. 1999). Claim terms "should be construed consistently with [their] appearance in other places in the same claim or other claims of the same patent." Rexnord Corp. v. The Laitram Corp., 274 F.3d 1336, 1342 (Fed. Cir. 2001). In addition, the specification is usually "dispositive; it is the single best guide to the meaning of a disputed term." Vitrionics, 90 F.3d at 1582. Courts are nonetheless cautioned not to import limitations from the specification into the claims. Phillips, 415 F.3d at 1323; The Laitram Corp. v. NEC Corp., 163 F.3d 1342, 1347 (Fed. Cir. 1998).

While courts can consider extrinsic evidence to educate themselves about the patent and technology at issue, it is improper to rely on extrinsic evidence in construing claims unless, after consideration of all the intrinsic evidence, ambiguity remains. Mantech Envtl. Corp. v. Hudson Envtl. Servs., Inc., 152 F.3d 1368, 1373 (Fed. Cir. 1998); Vitrionics, 90 F.3d at 1584. Extrinsic evidence is "evidence which is external to the patent and file history, such as expert testimony, inventor testimony, dictionaries, and technical treatises and articles." Vitrionics, 90 F.3d at 1584. Dictionaries may be useful to courts in understanding the ordinary and customary meaning of words, and courts may "rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents." Phillips, 415 F.3d at 1322-23. Where the meaning of a word is readily understood without need for clarification or explanation, no claim construction is necessary. See U.S. Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("[Claim construction] is not an obligatory exercise in redundancy.").

**B.**     **"Pivot Mount"**

The term "pivot mount" appears in claims 4, 6, 7, and 20 of the '849 patent. Claims 4, 6, 7, and 20 are dependent claims of claim 1. In its Responsive Claim Chart, Rubbermaid admitted the presence in its accused products of all elements of the claims at issue with the exception of element (c) of claim 1. Fairbairn Decl. [Docket No. 33], Ex. B. Therefore, the infringement analysis of all claims at issue turns entirely on whether element (c) of claim 1 is infringed. No construction of the term "pivot mount" is necessary because no controversy exists regarding that term; whatever it may be Rubbermaid has admitted its presence. See Vivid Technologies, Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d 795, 803 (Fed. Cir. 1999) ("[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy.").

Further, even if the term "pivot mount" were in controversy, the Court would decline to construe it because no construction is necessary. The meaning of the term would be evident to a juror and any further explanation risks confusion and redundancy. See U.S. Surgical Corp., 103 F.3d at 1568. Rubbermaid's proposed construction of "an assembly that allows for the mounting of a keyboard and allows the keyboard only to pivot, meaning rotate about a single axis" would limit the term beyond its plain meaning. Rubbermaid's argument for incorporating these restrictive limits relies on (1) specification figures that depict pivots rotating about a single axis and depict keyboard trays combined with (2) specification language that the keyboard tray "can be" pivoted about the horizontal axis. The specification cannot be used to incorporate limitations in this way. Phillips, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."). No construction of "pivot mount" is warranted and the Court

declines to construe it.

**C.     Means-Plus-Function Claim**

The term "means attached to said vertically oriented support panel between said first and second spaced apart vertically oriented and vertically movable rails for providing supported vertical linear motion and positioning of said vertically elevatable transport assembly with respect to said vertically oriented support panel and for maintaining said vertically elevatable transport assembly at the desired vertically elevated position when raised above the fully down position" is element (c) of claim 1 of the '849 patent. The parties agree that the term implicates the means-plus-function analysis of 35 U.S.C. § 112, ¶ 6. A means-plus-function analysis under 35 U.S.C. § 112, ¶ 6 is a two-step process: (1) first the Court construes the function recited, and (2) then determines what structures have been disclosed in the specification that correspond to the means for performing the identified function. Kemco Sales, Inc. v. Control Papers, Co., 208 F.3d 1352, 1361 (Fed. Cir. 2000).

   **1.     Function**

The parties largely agree on the function recited in element (c). Ergotron proposes the construction "providing linear motion and positioning of the transport assembly and maintaining the transport assembly at the desired vertically elevated position." Based on both the claim language itself and Ergotron's offered construction, it is apparent that the claim recites multiple functions. As such, Rubbermaid proposes two functions "providing supported vertical linear motion and positioning" and "holding the transport above the fully down position." These proposals are substantially similar, but the Court will adopt Ergotron's proposed construction. Ergotron's construction is clearer, identifying the "transport assembly" specifically. Further,

although more than a single function is recited, splitting the functions into separate statements is not necessary because a jury could readily understand that multiple functions are recited in a single sentence. Therefore, the function recited in element (c) of claim 1 is "providing linear motion and positioning of the transport assembly and maintaining the transport assembly at the desired vertically elevated position."

### 2. Corresponding Structure

Having construed the function recited in the claim, the Court must now determine what structure in the specification corresponds to that function. A patent that does not identify a corresponding structure is invalid as indefinite. Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc., 296 F.3d 1106, 1113 (Fed. Cir. 2002). "In order to qualify as corresponding, the structure must not only perform the claimed function, but the specification must clearly associate the structure with performance of the function." Id. (citations omitted). Further, only those features *necessary* to perform the claimed function constitute the corresponding structure. Northrop Grumman Corp. v. Intel Corp., 325 F.3d 1346, 1352 (Fed. Cir. 2003).

#### a.   Claim is not invalid for indefiniteness

Rubbermaid argues that because multiple functions are identified and only one structure, the "linkage assembly," is offered by Ergotron as a corresponding structure, the claim is fatally indefinite because no other structures are identified to correspond to the other functions. A single structure may correspond to multiple functions. See Cardiac Pacemakers, 296 F.3d at 1114 (holding that no structure corresponded to dual function); see also Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc., 248 F.3d 1303, 1313 (Fed. Cir. 2001) (noting that it is a "truism" that a single structure may perform two functions). Here, the specification clearly

associates the "linkage assembly" to the performance of all functions recited in the claim, and therefore Rubbermaid's indefiniteness argument is without merit. See '849 patent col.1, ll.61-63 ("The linkage assembly . . . provides for vertical support of the transport assembly . . . ."); col.4 ll.44-47 ("[A] linkage assembly 44 is utilized to provide supported vertical linear motion and positioning of the transport assembly . . . ."); col.5 ll.40-43 ("[T]he linkage assembly 44 provides sufficient force to maintain the transport assembly and payload at the desired height.").

Rubbermaid further argues that the claim is invalid because the '849 patent does not disclose what force is "sufficient" to perform the recited functions. Rubbermaid's position is unavailing. A patentee is not required to reinvent and describe the wheel. Atmel Corp. v. Information Storage Devices, Inc., 198 F.3d 1372, 1382 (Fed. Cir. 1999). It would be evident to one skilled in the art how to calibrate the pressure of the gas in the gas spring to accomplish the recited functions, and no more is required. See id. Claim 1 is not invalid, and the Court must construe the structure corresponding to the claimed functions.

### b.     Necessary parts of "linkage assembly"

Having settled that the linkage assembly is the structure corresponding to all functions, the linkage assembly must next be construed. Under the means-plus-function analysis, the linkage assembly is comprised of all parts necessary for the linkage assembly to perform all of the functions recited. Northrop Grumman, 325 F.3d at 1352.

Ergotron argues that the parts necessary to perform the function of "providing linear motion and positioning of the transport assembly and maintaining the transport assembly at the desired vertically elevated position" are either (1) a gas spring, or (2) a gas spring and a pushrod. Rubbermaid argues that the necessary components of the linkage assembly are the components

listed in figures two through six of the '849 patent specification: an angle bracket, an adjuster, a gas spring, a pivot assembly, an arm with a cam, an abutment assembly, an "ultra high molecular weight" polyethylene wear bar, all arranged in a specified manner. See '849 patent figs.2-6.

The parties merely assert that their offered constructions include the necessary components without explaining why only their offered construction captures what is necessary to accomplish the claimed functions. See Phillips, 415 F.3d at 1318 ("[C]onclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court."). After examining the '849 patent, the linkage assembly in the preferred embodiment appears to work as follows: a gas spring is connected on one end by a pivot to an adjuster that is connected to an angle bracket, and the gas spring is connected at the other end to an arm by a pivot assembly; at the end of the arm is a cam; as the transport assembly is moved up, the gas spring and arm rotate from a position with a downward slant to a mirror position with an upward slant that is almost fully vertical. Because the arm is a fixed length, as the angle changes when the arm and gas spring rotate, the end point of the arm must slide, this sliding is done by the cam and the wear bar is designed to withstand the repeated friction with the cam. Finally, the wear bar is connected to an abutment assembly that holds the transport assembly in place. The gas spring exerts the requisite force to support the vertical linear motion and maintain the transport assembly when positioned.

Of course, only the components in the preferred embodiment that are necessary to perform the function comprise the corresponding structure. See Northrop, 325 F.3d at 1352. Of all the parts discussed above, it appears that the essential features are a gas spring, an adjuster, an angle bracket, an arm, and a pivot. The features are arranged as follows: the gas spring is

connected on one end by the pivot to the adjuster. The adjuster is attached to the angle bracket, which is anchored to the lift system. The gas spring is connected on the other end to the arm. The arm connects to the transport assembly.

The wear bar, cam, and abutment assembly are non-essential components. The abutment assembly is comprised of a triangular plate and bracket and appears to do no more than facilitate positioning of the transport assembly with respect to the linkage assembly; the gas spring provides the support to maintain positioning. See '849 patent col.5 ll.1-56, col.5 ll.35-42. Therefore, whether or not an abutment assembly is present, if the arm, attached to the gas spring, touches the transport assembly, the function of "providing linear motion and positioning of the transport assembly and maintaining the transport assembly at the desired vertically elevated position" will be accomplished. Further, the wear bar and cam are non-essential, merely improving function and longevity as the cam slides back and forth as the transport assembly is moved up and down. See '849 patent col.5 ll.6-9 ("[A]n ultra high molecular weight (UHMW) polyethylene wear bar 64 . . . accomodate[s] intimate sliding contact with the cam . . . .").

The pushrod component urged by Ergotron is neither necessary nor associated with the claimed function. The pushrod serves the function of protecting against vigorous keyboard inputs, and is not associated with the function claimed in claim 1(c). See '849 patent col.6 ll.24-42.

Ergotron argues that the doctrine of claim differentiation dictates that only the gas spring be included as a component of the linkage assembly because claim 12 refers to a "linkage assembly composed of an angle bracket, an adjuster, an arm, and a gas spring." '849 patent col.10 ll.7-9. While claim differentiation favors certain readings, it does not change the

fundamental question of what structure is necessary to accomplish the function. The gas spring alone cannot accomplish the function at issue. The gas spring must be connected to something that will anchor it to the lift system, in the specification it is attached to the angle bracket via the adjuster. Further, the gas spring must be allowed to rotate, this is accomplished by a pivot. Further the gas spring must touch the transport assembly in order to support it, this is accomplished by the arm. All these parts are necessary and the doctrine of claim differentiation must give way to the laws of science that dictate which parts are necessary. See Laitram Corp. v. Rexnord, Inc., 939 F.2d 1533, 1538 (Fed. Cir. 1991) (holding that claim differentiation doctrine cannot override the requirements of the mean-plus-function statute).

Further, this construction is consistent with claim differentiation. While Rubbermaid's proposed construction would largely eviscerate the distinctions between the corresponding structure for claim 1(c) and claims 12 and 14-18, the Court's construction only fails to differentiate claim 12 and the corresponding structure. However, claim 12 is a dependent claim of claim 1, which is a mean-plus-function claim. Claim differentiation is maintained in such a case because an independent claim containing mean-plus-function limitations remains broader than a dependent claim that specifically claims a structure, as the independent claim covers the structure plus its equivalents. Laitram, 939 F.2d at 1539.

### c.     Inclusion of "and their equivalents"

Finally, the parties dispute whether the construction of the structure must include the phrase "and their equivalents." As a matter of law, the scope of the claim covers the corresponding structure and its equivalents. 35 U.S.C. § 112, ¶ 6. However, Rubbermaid argues that Ergotron's September 21, 1999 amendment, which deleted the phrase "two-bar linkage

assembly" and stated that the linkage assembly includes an "angle bracket" and "a gas spring," narrowed the scope of the patent to exclude structural equivalents. Statements made during prosecution may influence a court's construction under the doctrine of prosecution disclaimer. Prosecution disclaimer requires a "clear and unmistakable" disavowal. Omega Eng'g, Inc. v. Raytek Corp., 334 F.3d 1314, 1326 (Fed. Cir. 2003). The record here does not show such a disavowal. To be sure, Ergotron clarified the scope of the linkage assembly. However, such a clarification is not a clear and unmistakable disavowal of the structural equivalents of the linkage assembly. The Court has construed the linkage assembly to consist of more than two bars and to include an angle bracket and gas spring, and nothing in the record indicates a clear and unmistakable disavowal of all structural equivalents of the linkage assembly as that term has been defined here. Therefore, the phrase "and their equivalents" is properly included.

In summary, based on the above discussion, the corresponding structure to the function recited in claim 1(c) is a linkage assembly comprised of a gas spring connected on one end by a pivot to an adjuster and connected on the other end to an arm, the adjuster is attached in turn to the angle bracket that is anchored to the lift system, and their equivalents.

**D.    Daubert Motion**

Ergotron seeks to exclude the Declaration of Dr. David Rondinone [Docket No. 36] pursuant to Rule 702 of the Federal Rules of Evidence and the standard set forth in Daubert v. Merrell Dow Pharms., 509 U.S. 579, 597 (1993). The Court did not rely on Dr. Rondinone's Declaration in construing the terms at issue. Therefore, Ergotron's motion is denied as moot.

## IV.  CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that, in interpreting the '849 patent the disputed terms will be construed in accordance with this Order.

BY THE COURT:


     s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  June 10, 2011.